IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JESSICA BENUZZI, )
)
Plaintiff, )
) Civil Action No.: 09 C 3510
v. )
) Suzanne B. Conlon, Judge
BOARD OF EDUCATION OF THE CITY )
OF CHICAGO, and CHERYL WATKINS, )
individually and as an agent of the BOARD )
OF EDUCATION OF THE CITY OF )
CHICAGO, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Jessica Benuzzi sues the Board of Education of the City of Chicago ("the Board") and Cheryl Watkins under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, and 42 U.S.C. § 1983.[1] Benuzzi alleges defendants discriminated against her on account of her race, age, gender, and disability, and retaliated against her for filing complaints with the Equal Employment Opportunity Commission ("EEOC"). Defendants jointly move for summary judgment. For the following reasons, the motion is granted.

---

[1] With Benuzzi's consent, the court dismissed the Title VII, ADEA, and ADA claims against Watkins. *See* Minute Order, Dkt. No. 28 (Oct. 14, 2009). The claims remaining against Watkins are for discrimination and retaliation in violation of 42 U.S.C. § 1983 (Counts V and VI). Nonetheless, because Watkins' alleged actions as an agent of the Board underlie nearly all Benuzzi's claims, the court refers collectively to "defendants" for convenience.

## BACKGROUND

### I. Local Rule 56.1

When considering a summary judgment motion, the court derives the facts from the parties' Local Rule 56.1 statements. Local Rule 56.1 assists the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposes to prove a disputed fact with admissible evidence. *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). The movant is required to provide a statement of undisputed material facts, with appropriate record citations, that justify summary judgment. Local Rule 56.1(a)(3). Citing to the record, the nonmoving party must admit or deny each of the movant's statements, and may also submit a statement of additional facts that require denial of summary judgment. Local Rule 56.1(b)(3).

Local Rule 56.1 statements are to consist of *short*, numbered paragraphs. Disregarding that obligation, Benuzzi submits a statement of additional facts consisting of excessively lengthy paragraphs; some nearly half a page long. A district court is entitled to expect strict compliance with Local Rule 56.1. *See, e.g., Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon*, 233 F.3d at 527. Rather than wade through Benuzzi's convoluted narratives, the court shall not consider factual statements that fail to comply with Local Rule 56.1. *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005) (court may penalize non-compliance with Local Rule 56.1 by ignoring proposed facts). The court also declines to look beyond the parties' Local Rule 56.1 statements for genuine trial issues. *See Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (court not obliged to scour the record for factual disputes, especially in employment discrimination cases, which are fact-

2

intensive by nature). This point is worth emphasizing because Benuzzi's complaint contains numerous allegations not addressed in her statement of additional facts.

## II. Relevant Facts

Benuzzi, a 50-year-old Caucasian female, has been employed by the Chicago Public Schools as a custodian-engineer since 1981. Def. Facts ¶ 1; Pl. Resp. ¶ 1. She is currently assigned to John J. Pershing West Magnet School ("Pershing"). Def. Facts ¶ 1. Defendant Watkins, an African-American female in her 40s, has been Pershing's principal since September 2005. *Id.* ¶ 4. Suffice it to say that Benuzzi's relationship with Watkins and several other co-workers has been contentious.[2]

In September 2005, shortly after arriving at Pershing, Watkins issued Benuzzi a cautionary notice for addressing her in an elevated tone. Def. Facts ¶ 18. Six months later, another of Pershing's custodian-engineers, Charles Armour, complained to Watkins that Benuzzi was inappropriately discussing her and Watkins' menstrual cycles.[3] *Id.* ¶ 19. Watkins met with both Armour and Benuzzi, but took no disciplinary action. *Id.*

In June 2006, while Watkins was discussing a performance-related issue with her, Benuzzi suddenly bent over, screamed, and left the room. Def. Facts ¶ 20. Although Benuzzi maintains she was merely experiencing stomach pains, Watkins thought her behavior was erratic.

---

[2] Benuzzi moved to strike several of defendants' Local Rule 56.1 statements as inadmissible evidence. The challenged statements pertained to disciplinary action taken against Benuzzi prior to her assignment to Pershing, as well as her poor relationship with a prior supervisor. *See* Def. Facts ¶¶ 6-10. Benuzzi's motion to strike was denied as a disfavored remedy. *See* Minute Order, Dkt. No. 95 (Apr. 9, 2010). Although not stricken, the court has not considered prior employment issues for summary judgment purposes.

[3] As with all the accusations lodged against her, Benuzzi denies doing anything wrong. She does not deny the accusations were made.

3

*Id.*; Pl. Resp. ¶¶ 21-22. Several days later, Watkins requested Benuzzi to undergo a fitness-for-duty evaluation. Def. Facts ¶ 21. Benuzzi was found fit and returned to work on July 13, 2006. *Id.* Only four days after her return, Jeffrey Vaughn, another Pershing custodian-engineer, complained to Watkins about Benuzzi. *Id.* ¶ 22. Vaughn told Watkins that Benuzzi confronted him at the school and said, "you know you are not wanted here, you are a pussy, a liar and a snitch." *Id.* After instructing Vaughn to leave the building, Watkins contacted Benuzzi and claims she hung up the phone on her; Benuzzi denies doing so. *Id.*; Pl. Resp. ¶ 22.

On July 28, 2006, Watkins suspended Benuzzi for 15 days for failing to treat fellow employees with respect and leaving the school building without permission. Def. Facts ¶ 23. Represented by her union, Benuzzi appealed the suspension and was afforded an opportunity to present rebuttal evidence. *Id.*; Pl. Resp. ¶ 23. Nevertheless, the disciplinary action was upheld and Benuzzi served the suspension without pay.

On October 3, 2006, Benuzzi filed an EEOC charge alleging gender discrimination. Def. Facts ¶ 24. On January 17, 2007, she filed a second EEOC charge alleging age, race, gender, and disability discrimination.[4]

In March 2007, Pershing's assistance principal advised Watkins that Benuzzi approached a student and said, "Do you see how your principal acts. You shouldn't even go to this school. It's a disease."[5] Def. Facts ¶ 26; Pl. Resp. ¶ 26. Two weeks later, Benuzzi was suspended for 15 days for using verbally abusive language to or in front of students. Def. Facts ¶ 27. Again,

---

[4] The facts surrounding the alleged disability discrimination are addressed below in discussing Benuzzi's ADA claim.

[5] Benuzzi argues the student's comment should be stricken as inadmissible hearsay. The statement is not hearsay, as it is offered for its effect on Watkins – to explain why Watkins took disciplinary action against her. *United States v. Inglese*, 282 F.3d 528, 538 (7th Cir. 2002).

4

Benuzzi appealed her suspension. Pl. Resp. ¶ 27. The suspension without pay was upheld. *Id.* In May 2007, Watkins suspended Benuzzi another 15 days for failing to follow her directives and for being disrespectful. *Id.* ¶ 29. The suspension was upheld on appeal. *Id.*

On June 6, 2007 and March 10, 2008, Benuzzi filed two more EEOC charges alleging discrimination on account of her age, gender, race, and disability. Def. Facts ¶¶ 30-31. The court assumes the June 6 charge was related to Benuzzi's March 2007 suspension; it is unclear what precipitated the March 2008 charge. Notwithstanding Benuzzi's multiple suspensions, she received an "outstanding" performance evaluation for the 2007-08 school year. *Id.* ¶ 32.

Benuzzi filed this lawsuit on June 9, 2009. Shortly after Watkins waived service of the complaint, she asked Benuzzi to sign a cautionary notice. Pl. Facts ¶ 32. The nature of the cautionary notice is unclear from the record. Watkins also sought to have Benuzzi transferred from Pershing, as Watkins felt threatened by her and concerned for her own safety and that of other employees. *Id.* ¶ 33. Because Benuzzi remains at Pershing, *see* Def. Facts ¶ 1, the court assumes nothing came of Watkins' request. On February 26, 2010, one day after being deposed, Benuzzi was issued a notice of pre-discipline hearing. Pl. Facts ¶¶ 34-35. The notice includes allegations that Benuzzi was insubordinate in March 2009 and that she assaulted another employee, Charles Armour, on February 2, 2010. *Id.* No disciplinary action has been taken on these charges. *Id.*

## DISCUSSION

### I. Legal Standard

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

5

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Defendants have the initial burden of demonstrating they are entitled to summary judgment. *Kramer v. Vill. of Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). Once they meet this burden, Benuzzi must go beyond the pleadings and set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). A genuine issue requires more than some metaphysical doubt as to the material facts; Benuzzi must show there is evidence sufficient to support a reasonable jury verdict in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court views all the facts and draws all reasonable inferences in Benuzzi's favor. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). However, the court limits its analysis of the facts to evidence properly presented in the parties' Local Rule 56.1 statements. *Bordelon*, 233 F.3d at 529.

## II. Analysis

Benuzzi brings a barrage of discrimination and retaliation claims under Title VII, the ADEA, the ADA, and § 1983. Given the number of claims and the fact that employment discrimination suits are inherently fact-intensive, it is incumbent upon Benuzzi to provide the court with a clear idea of her legal theories, particularly whether she is asserting under either a direct or indirect method of proof. Besides alleging discriminatory acts, Benuzzi's complaint repeatedly asserts she was subjected to a hostile work environment. However, she has not advanced a hostile work environment claim in her summary judgment response and waives that claim. *Palmer v. Marion Cty.*, 327 F.3d 588, 597-98 (7th Cir. 2003). It is not the court's

6

obligation to construct legal arguments, especially for a party represented by counsel. *United States v. Brown*, 899 F.2d 677, 679 n. 1 (7th Cir. 1990).

### A. Gender, Race, and Age Discrimination

The court first addresses Benuzzi's claims of discrimination on account of her gender, race, and age (Counts I, II, and VII). It is unlawful for employers to discriminate against individuals on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Similarly, it is unlawful for employers to discriminate against an employee because of age. 29 U.S.C. § 623(a)(1). Under both Title VII and the ADEA, Benuzzi may prove discrimination through either the direct or indirect methods of proof. *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 559 (7th Cir. 2007) (ADEA); *Mateu-Anderegg v. Sch. Dist. of Whitefish Bay*, 304 F.3d 618, 623 (7th Cir. 2002) (Title VII). Benuzzi relies on the indirect method articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Accordingly, she must put forward a *prima facie* case by establishing that: (1) she is a member of a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class received more favorable treatment.

Benuzzi's failure to establish any of the elements of a *prima facie* case entitles the Board to summary judgment. *Beamon v. Marshall & Isley Trust Co.*, 411 F.3d 854, 862 (7th Cir. 2005). If a *prima facie* case is made, the Board must offer a legitimate, nondiscriminatory reason for the adverse employment action. *Cianci v. Pettibone Corp.*, 152 F.3d 723, 726 (7th Cir. 1998). If the Board provides such a reason, Benuzzi must show it is merely a pretext for discrimination. *Id.*

7

Although the parties' arguments largely focus on whether Benuzzi met expectations and whether others received more favorable treatment, it is necessary to identify, for purposes of analysis, the adverse employment actions taken against Benuzzi. An "adverse employment action" must materially alter the terms and conditions of her employment. *Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 647-48 (7th Cir. 2005). Negative evaluations, written warnings, and reprimands do not constitute adverse employment actions unless accompanied by tangible job consequences, such as loss of pay or promotion. *Id.* With this standard in mind, the only adverse actions brought to the court's attention are Benuzzi's disciplinary suspensions without pay. There is no evidence that the cautionary notices and notice of pre-disciplinary hearing altered the terms of her employment. The same is true of Benuzzi's allegations that Watkins interfered with her annual performance evaluation and usurped her supervisory authority. Benuzzi presents no evidence that these actions materially effected her employment or career opportunities. In considering her Title VII and ADEA claims, the court limits consideration to the suspensions.

The Board argues Benuzzi cannot establish a *prima facie* case of discrimination because she was not meeting the job's legitimate expectations. Benuzzi contends her "outstanding" evaluation for the 2007-08 school year, as well as Pershing's high grades for maintenance, demonstrate the adequacy of her performance. When considering whether an employee is meeting her employer's expectations, the court looks to whether she was performing adequately *at the time of the adverse employment action*. *Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009). Benuzzi's evaluation and Pershing's maintenance score may by relevant, but they alone cannot establish the adequacy of her performance "at the crucial time when the employment action was taken." *Fortier v. Ameritech Mobil Communs.*, 161 F.3d 1106, 1112 (7th Cir. 1998).

8

At the time of her suspensions, there were concrete reasons to think she was failing to meet expectations. She was first suspended in July 2006 after using vulgar and abusive language towards Vaughn and leaving the school without permission.[6] Her March 2007 suspension followed an incident when she used inappropriate language with a student. Her third suspension, in May 2007, stemmed from a failure to follow Watkins' directives and for being disrespectful.[7] All three suspensions were upheld on appeal. Although Benuzzi may have been performing well in other facets of her job, she has failed to show she was meeting the job's legitimate expectations with respect to the incidents leading to her suspensions.

Even if Benuzzi could show she was performing at the required level, she has not demonstrated that similarly situated employees outside the protected class were treated more favorably. In determining whether an employee is comparable, the court looks to all relevant factors, including whether the employee (1) held the same job description; (2) was subject to the same standards; (3) was subordinate to the same supervisor; and (4) had comparable experience, education, and other qualifications. *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005). Benuzzi does not clearly identify who she thinks are the best comparators. She implies that Vaughn was viewed more favorably by Watkins; Vaughn is younger than Benuzzi and a male (his race is not identified in the Local Rule 56.1 statements). But Vaughn, and the other

---

[6] The circumstances of Benuzzi's unauthorized departure from the school is not apparent from the Local Rule 56.1 statements. Even so, Benuzzi does not dispute that Vaughn complained to Watkins about inappropriate language, though she denies making the comments.

[7] Watkins issued Benuzzi an e-mail directive to have a custodian-engineer under her supervision empty trash cans. Benuzzi allowed the particular employee to leave work that day without completing the assigned task; Benuzzi claims she did not see Watkins' e-mail until afterwards.

9

Pershing custodian-engineers briefly mentioned by Benuzzi, are not similarly situated. Benuzzi is responsible for supervising the other custodian-engineers. *See* Pl. Facts ¶ 10. As the most senior custodian-engineer at Pershing, she could reasonably be held to a higher standard of conduct. *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520 (7th Cir. 2003) (supervisory and non-supervisory employees not sufficiently comparable).

More importantly, Benuzzi has not shown that other custodian-engineers engaged in similar conduct. *Fane v. Locke Reynolds LLP*, 480 F.3d 534, 540 (7th Cir. 2007). She claims Watkins declined to follow her recommendation to discipline a "Ms. Tines" for insubordination and failure to perform assigned duties. Benuzzi does not specify Ms. Tines' age or race, *see* Pl. Facts ¶ 38, so it impossible to determine how this episode relates to her Title VII and ADEA claims. Watkins concluded Tines' work was completed and Benuzzi had been antagonizing her. Along with Benuzzi's supervisory status, these are sufficiently distinguishing circumstances to warrant disparate treatment. Benuzzi claims Vaughn was not disciplined for leaving school without permission, but there is no evidence that this transgression was brought to Watkins' attention. Benuzzi recounts an instance when Willie Rush (presumably a male; his age and race are unspecified) received a two-day suspension for using inappropriate language toward Vaughn. Benuzzi fails to explain how Rush's suspension demonstrates the type of favorable treatment necessary to establish a *prima facie* case of discrimination. It is her burden to put forth evidence of employees outside the protected class who were treated more favorably. *Dear*, 578 F.3d at 610. She has failed to do so.

Even assuming Benuzzi were able to establish a *prima facie* case of discrimination, the Board has provided legitimate, non-discriminatory reasons for her suspensions. The court does

10

not sit as a "super personnel department" with authority to scrutinize an employer's decision to discipline an employee. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006). The circumstances leading to Benuzzi's suspensions were well-documented. While Benuzzi insists the proferred reasons are merely pretextual, she provides no evidence suggesting the suspensions were motivated by discriminatory animus on account of her age, gender, or race. The Board is entitled to summary judgment on Counts I, II, and VII.

## B.  Disability Discrimination

It is unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA requires employers to make "reasonable accommodations" for the disabilities of qualified individuals. 42 U.S.C. § 12112(b)(5)(A). There are two distinct categories of ADA claims: disparate treatment and failure to accommodate. *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1125 (7th Cir. 2006). Benuzzi's complaint has elements of both categories, alleging she was treated differently on account of a gastrointestinal condition and knee and back injuries, and that the Board failed to make reasonable accommodations. Her summary judgment response crafts only a failure to accommodate claim; she has waived any disparate treatment claim based on these disabilities. *Id.* at 1125-26.[8]

For a failure to accommodate claim, Benuzzi must establish: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer

---

[8] In her summary judgment response, Benuzzi raises, for the first time, a disparate treatment claim based on defendants' alleged belief that she suffers from a mental illness. The complaint unambiguously limits the ADA claim to a gastrointestinal condition and several work-related injuries. *See* Comp. ¶ 32. Discovery closed well before Benuzzi's summary judgment response was due; she has never sought to amend her complaint to include a mental illness claim.

11

failed to reasonably accommodate her. *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008). Her purported disability is irritable bowel syndrome ("IBS"), which causes her to occasionally experience discomfort and sharp pains. Def. Facts ¶ 11; Pl. Facts ¶ 11. Over a two-year period, she claims to have missed work approximately twelve times due to IBS. Def. Facts ¶ 12. She is able to prevent recurrences with medication and proper eating habits. *Id.* ¶¶ 11-12.

Benuzzi's ADA claim fails at the outset because she has not provided sufficient evidence to create a genuine issue of fact as to whether she is disabled within the meaning of the ADA. She may prove she is disabled by establishing that: (1) she has a physical or mental impairment that substantially limits one or more major life activities; (2) she has a record of the impairment; or (3) her employer regards her as having the impairment. 42 U.S.C. § 12102(1). "Substantially limits" means that Benuzzi is either unable to perform or is significantly restricted from performing a major life activity that the average person in the general population can perform. 29 C.F.R. § 1630.2(j)(1). The nature of the limitation is not considered with respect to a specific job, but in light of what most people do in their daily lives. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 801 (7th Cir. 2005). The court must also consider her IBS as it exists after corrective or mitigating measures are used to combat the impairment. *Branham v. Snow*, 392 F.3d 896, 903 (7th Cir. 2004). To survive summary judgment, she must provide specific facts establishing that there is a material dispute as to whether her IBS substantially limits a major life activity. *Scheerer v. Potter*, 443 F.3d 916, 919 (7th Cir. 2006).

Aside from occasional pain, the severity of which is not described, Benuzzi has failed to show how she is limited by IBS. She fails to present any evidence, medical or otherwise, from

12

which a reasonable jury could conclude that IBS substantially limits a major life activity. *Stein v. Ashcroft*, 284 F.3d 721, 726 (7th Cir. 2002) (plaintiff must present evidence that the extent of the limitation, in terms of her own experience, is substantial). She testified IBS "didn't actually affect [her] job" and that prescribed medication prevented occurrences "[a]s long as I followed my proper eating habits and some dietary restrictions." Benuzzi Dep. Tr. at 60-61. If an impairment may be corrected with medication, it does not substantially limit a major life activity. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 482-83 (1999). Furthermore, her infrequent IBS-related absences, about one every two months, does not render her condition a disability. The summary judgment record does not establish that Benuzzi is unable to perform tasks central to most people's lives; this is fatal to her claim that she is disabled within the meaning of the ADA. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007). The Board is entitled to summary judgment on the ADA claim (Count IX).

## C. Equal Protection Claims

Pursuant to 42 U.S.C. § 1983, Benuzzi claims the Board intentionally discriminated against her in violation of the Equal Protection Clause of the Fourteenth Amendment. The Board, as a local governmental unit, cannot be held liable under § 1983 solely on the theory of *respondeat superior*; there must be evidence that an official custom or policy violated Benuzzi's rights. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690-91 (1978). She can prove the Board violated her rights by one of three methods: (1) an injury caused by the existence of an express policy; (2) an injury caused by a widespread practice or custom; or (3) an injury caused by a person with final policymaking authority. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir.

2005). She confirms in her summary judgment response that she is proceeding under the theory that Watkins had final policymaking authority in the area of discipline.

Under § 1983, a person's status as a final policymaker is a question of state or local law. *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004). Unreviewed discretion is not the same as policymaking authority; there must be evidence that the Board gave Watkins policy-making authority. *Id.* ("The mere authority to implement pre-existing rules is not the same as the authority to set policy"). Benuzzi fails to present evidence of any law or custom that gave Watkins or the hearing officer who upheld the suspensions final authority to set policies regarding discipline. Watkins may have had discretionary authority to discipline within Pershing, but there is no evidence of authority to make broader decisions about employment policies. *See Brandt v. Bd. of Educ. of City of Chicago*, 420 F.Supp.2d 921, 937 (N.D. Ill. 2006) (St. Eve, J.) (granting summary judgment where principal had disciplinary authority within the school but lacked authority to make city-wide discipline policies). There is also no evidence that the hearing officer "rubber stamped" Watkins' decisions or that the hearing officer was the final level of review available to her. In short, Benuzzi has not provided evidence of a causal link between her injuries and the Board's policy. *See Forman v. Richmond Police Dep't*, 104 F.3d 950 (7th Cir. 1997) (direct causal link must exist between the alleged constitutional deprivation and a municipal policy or custom). The Board is entitled to summary judgment on Benuzzi's § 1983 claim (Count IV).

Benuzzi also brings a § 1983 equal protection claim against Watkins in her individual capacity. To establish a *prima facie* case of discrimination, she must show: (1) she is a member of a protected class; (2) she is otherwise similarly situated to members of the unprotected class;

14

and (3) she was treated differently from members of the unprotected class. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). She must also prove Watkins was motivated by a discriminatory purpose. *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001). There is no need to recount the shortcomings in Benuzzi's proof. For reasons explained above in the discussion of other claims, she has failed to establish a viable claim of intentional discrimination. Summary judgment is entered for Watkins on Count V.

Defendants are also granted summary judgment on Benuzzi's § 1983 retaliation claim (Count VI). The right to be free from retaliation is protected by Title VII, the ADEA, and the ADA, but not by the equal protection clause. *Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004).

### D. Retaliation

Defendants seek summary judgment on Benuzzi's retaliation claims (Counts III, VIII, and X).[9] In addition to prohibiting discrimination, Title VII, the ADEA, and the ADA prohibit employers from engaging in statutorily protected activity, such as opposing or complaining of discrimination. 42 U.S.C. § 2000e-3 (Title VII); 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 12203 (ADA). Benuzzi contends she suffered retaliation as a result of seeking accommodation under the ADA and filing charges with the EEOC. Defendants argue she cannot establish a case of retaliation because there is no evidence of causation or pretext.

A plaintiff may establish retaliation by either the direct or indirect methods of proof. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 633 (7th Cir. 2009). When proceeding under the

---

[9] The failure of her discrimination claims is not dispositive of her retaliation claims. *See Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 1996) ("All that is required is that [plaintiff] reasonably believed in good faith that the practice she opposed violated [anti-discrimination laws]").

15

indirect method, a plaintiff must establish a *prima facie* case of retaliation by showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; (3) she was meeting her employer's legitimate expectations; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. It is not obvious from Benuzzi's summary judgment response whether she is proceeding under the indirect method. She provides no evidence or argument that she was treated less favorably than other similarly situated employees who did not engage in protected activity. And for reasons previously discussed, she has failed to show she was meeting expectations at the time of the adverse employment actions. If she seeks to prove her retaliation claim indirectly, she has failed to demonstrate a genuine triable issue.

To satisfy her burden under the direct method, Benuzzi must prove that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the employment action. *Cracco*, 559 F.3d at 633. In attempting to prove the causal connection, she is not limited to admissions of intentional discrimination, but may present circumstantial evidence that points to discriminatory intent. *Davis v. Con-Way Trans. Central Exp., Inc.*, 368 F.3d 776, 786 (7th Cir. 2004). There are no admissions of intentional discrimination by Watkins or anyone else. The issue then is whether the circumstances surrounding Benuzzi's adverse employment actions suggest retaliation.

On July 21, 2006, Benuzzi asked Watkins to put her on an earlier day shift as an accommodation for her IBS. Pl. Facts ¶ 15. A request for a disability accommodation is a "statutorily protected activity" for purposes of a retaliation claim. *Sanchez v. City of Chicago*,

16

No. 05 C 6801, 2007 WL 647485, at *8 (N.D. Ill. Feb. 28, 2007) (Kocoras, J.). One week later, she was suspended for verbally abusing another custodian-engineer and leaving school grounds without permission. Def. Facts ¶¶ 22-23. But the suspension pertained to conduct that occurred on July 17, days before her accommodation request. *Id.* She does not dispute that the other employee complained to Watkins. No reasonable jury could conclude that Benuzzi's first suspension was retaliatory.

On October 3, 2006, Benuzzi filed her first EEOC charge, alleging racial discrimination. Def. Facts ¶ 24. Filing an EEOC charge is a statutorily protected activity. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). On January 9, 2007, she again requested an earlier shift, ostensibly to accommodate her IBS. Pl. Facts ¶ 15. Eight days later, she filed her second EEOC charge. Def. Facts ¶ 25. But the next adverse employment action was not until March 2007, when she was overheard using inappropriate language with a student. *Id.* ¶ 26-27. More than two months elapsed between her second EEOC charge and the suspension; nearly six months elapsed after the first EEOC charge. The timing of Benuzzi's suspension does not establish a genuine issue of material fact, especially when she points to no evidence that defendants were even aware of the EEOC charges. *See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004) (mere temporal proximity not enough to establish genuine issue); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 919 (7th Cir. 2000) (three-month gap alone could not reasonably support a causal connection for retaliation). The timeline is even more attenuated with respect to her May 2007 suspension for failing to comply with Watkins' e-mail directive.

On June 6, 2007, Benuzzi filed another EEOC charge. Def. Facts ¶ 30. The following month, she made another accommodation request for a shift change. Pl. Facts ¶ 15. On March

17

10, 2008, she filed her fourth EEOC charge. Def. Facts ¶ 31. She provides no evidence of adverse employment actions taken against her during the 2007-08 school year; in fact, she received an "outstanding" performance evaluation. *Id.* ¶ 32. There is no evidence to support a reasonable jury finding of retaliation.

In addition to the suspensions without pay, Benuzzi has not provided evidence of other adverse employment actions that could possibly support a retaliation claim. It is undisputed that she was asked to sign a cautionary notice shortly after filing this lawsuit in June 2009, though the nature of the notice is unclear. Pl. Facts ¶ 32. But Benuzzi does not advance evidence demonstrating that the notice was retaliatory. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 902 (7th Cir. 2003) (written reprimand unaccompanied by tangible job consequences is not adverse employment action in context of retaliation claim). The same is true of Benuzzi's pending disciplinary proceedings, as she offers no evidence that the mere issuance of a notice of pre-discipline hearing has tangible job consequences.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted.

ENTER:

Suzanne B. Conlon
United States District Judge

May 27, 2010

18