IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA BENUZZI, | ) | |
|     Plaintiff, | ) | Case No. 09 C 3510 |
| | ) | |
|     v. | ) | Judge Joan B. Gottschall |
| | ) | |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) ) | |
|     Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jessica Benuzzi, who is a white female and is now retired, was one of the first female custodians hired by the Chicago Public Schools in the early 1980s. After Benuzzi was selected to be the building engineer-in-charge at the then newly opened John J. Pershing Magnet School in Chicago, Benuzzi and her African-American supervisor, principal Cheryl Watkins, clashed. Numerous EEOC charges and this retaliation and discrimination lawsuit against the Board of Education of the City of Chicago followed.

The judge previously assigned to this case granted the Board's motion for summary judgment in its entirety. The Seventh Circuit reversed in part and remanded Benuzzi's retaliation claim for trial. After the case was reassigned to this court, Benuzzi amended her complaint to add additional instances of alleged retaliation, the parties pursued discovery regarding those allegations, and after the close of this second wave of discovery, the Board filed a motion for summary judgment directed at all instances of purported retaliation – both those considered by the Seventh Circuit and the new allegations. For the following reasons, the Board's second motion for summary judgment is denied.

# I. PROCECURAL POSTURE

In 2009, Benuzzi filed suit alleging retaliation and gender, race, age, and disability discrimination claims against the Board. Judge Conlon, who previously presided over this case, granted summary judgment in favor of the Board on all of Benuzzi's claims based on, in part, what she believed were Benuzzi's flagrant violations of Local Rule 56.1. Benuzzi appealed the grant of summary judgment as to her gender discrimination and retaliation claims. The Seventh Circuit affirmed the grant of summary judgment on the gender discrimination claim but reversed the ruling on Benuzzi's retaliation claim and remanded that claim for trial. *See Benuzzi v. Bd. of Educ. of City of Chicago*, 647 F.3d 652 (7th Cir. 2011). Following the remand, the case was reassigned to this court.

Benuzzi requested leave to file an amended complaint to conform her allegations to the Seventh Circuit's decision and to add new allegations about retaliation that purportedly had occurred while the case was on appeal. The Board moved to dismiss, but before the court could rule, Benuzzi sought leave to file a second amended complaint based on her receipt of a right to sue letter relating to an April 2011 EEOC charge of discrimination. The court allowed Benuzzi to file a second amended complaint. The Board again moved to dismiss, arguing that Benuzzi improperly added additional claims of retaliation that were outside the scope of the remand. According to the Board, the Seventh Circuit's remand order was limited to holding a trial to determine if a memorandum limiting Benuzzi's hours of access to the school and the notice of pre-discipline hearing given to Benuzzi immediately after her deposition in this case were retaliatory.

The court rejected this argument and found that the remand order resolved everything except Benuzzi's retaliation claim. *Benuzzi v. Bd. of Educ. of City of Chicago*, No. 09 C 3510, 2013 WL 80368, at *1 (N.D. Ill. Jan. 4, 2013). As the court explained, "The Seventh Circuit's opinion in this case concludes as follows: 'there are genuine issues of material fact as to the adverse nature of the actions the defendants took against Benuzzi in the wake of her deposition, and whether those actions were causally linked to Benuzzi's participation in this case. We therefore vacate the district court's grant of summary judgment on Benuzzi's retaliation claim and remand for trial.'" *Id*. (quoting *Benuzzi*, 647 F.3d at 666). The court found that this language "set[] aside the district court's grant of summary judgment on the entire retaliation claim and remand[ed] that entire claim [based on both the direct and indirect methods] for trial." *Id*.

Nevertheless, the court did not set a trial date as it determined that the second amended complaint was fatally flawed. Specifically, the court stated that:

> . . . there is no question that the Second Amended Complaint is so full of immaterial information that it is close to useless as a guide to the allegations that will be tried in this case. Despite Judge Conlon's obvious impatience with plaintiff's prolix materials, plaintiff persists in pleading detailed facts, apparently hoping her opponent and the court will do the work of separating the wheat from the chaff or, even worse, that the jury will become confused at what is at issue and the confusion will benefit plaintiff. This court will not subject itself, the defendant or the jury to such a potentially prejudicial and misleading mess.
>
> Just as an example, starting with paragraph 13, plaintiff describes in detail the charge of discrimination she filed with the EEOC. This is inappropriate for so many reasons it is hard to know where to start. For one thing, plaintiff's discrimination charge is not relevant to this litigation at this point, since Judge Conlon granted summary judgment to defendant on this claim and the Seventh Circuit affirmed. Why should this complaint describe EEOC claims that are no longer part of this case? Second, plaintiff, in the guise of describing her irrelevant EEOC claims, manages to lard her complaint with all kinds of hearsay as to what she thought defendant did wrong. None of this material would be admissible,

> even if plaintiff's discrimination charge were at issue, so why it belongs in the
> complaint is an utter mystery. The detailed fact pleading, completely
> inappropriate in a notice pleading system, allows plaintiff to describe in detail
> everything that happened to her, whether she claims it was retaliatory or not and
> whether she claims it amounted to an adverse action or not. With such a pleading
> mess, the court cannot fulfill its responsibility of ensuring that the jury hear only
> evidence relevant to plaintiff's claim. The complaint is therefore stricken.
> Plaintiff may, by January 23, 2013, file a Third Amended Complaint which makes
> clear the adverse actions which form the gravamen of plaintiff's retaliation claim
> and which eliminates all extraneous factual allegations.

*Id.* at *2.

In response to this order, Benuzzi filed a third amended complaint (Dkt. 162) containing a Title VII retaliation claim based on her gender and race (Count I) and a claim entitled "Section 1983, 42 U.S.C. § 1983: Retaliation" (Count II). The Board moved to dismiss Count II. Benuzzi did not object so the court dismissed Count II. This left Benuzzi's retaliation claim, which includes a list of allegedly retaliatory acts. (Dkt. 162 at ¶¶ 10-38.)

Following the filing of the third amended complaint, the parties proceeded with discovery relating to the new allegations of retaliation that allegedly occurred starting when the case was on appeal. At the close of discovery, the Board filed a renewed motion for summary judgment directed at all of the instances of alleged retaliation asserted by Benuzzi (both the allegations that the Seventh Circuit found merited a trial and the new allegations based on events that occurred after Benuzzi appealed Judge Conlon's summary judgment ruling in August 2010).

## II. BACKGROUND

The court assumes familiarity with the Seventh Circuit's opinion summarizing Benuzzi's long and troubled relationship with her supervisor, principal Cheryl Watkins. When Benuzzi and Watkins first met, Watkins accused Benuzzi of stealing a ring, which Watkins later found.

This inauspicious interaction was a harbinger of what was to come. As detailed in the Seventh Circuit's opinion, Benuzzi filed a series of EEOC complaints based on multiple incidents.

The court will summarize the facts necessary to resolve the Board's motion for summary judgment below. It will not provide a complete summary of the extensive retaliation claimed by Benuzzi as most of it is irrelevant for present purposes. The court also declines to address the Board's numerous objections to almost every aspect of Benuzzi's Rule 56.1 submissions as they do not affect the result.

### III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In resolving summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation omitted).

To state a claim for retaliation against the Board under Title VII using the direct method of proof, "Benuzzi must produce evidence from which a jury could conclude: '(1) that she engaged in a statutorily protected activity; (2) that she suffered an adverse action by her

employer; and (3) there was a causal link between the two.'" *Benuzzi*, 647 F.3d at 664 (quoting *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011)). Alternatively, Benuzzi may proceed with the indirect method of proof. This removes the causal link element and requires her to allege that a similarly situated employee who did not engage in protected activity was treated more favorably. *See Jajeh v. Cnty. of Cook*, 678 F.3d 560, 573 (7th Cir. 2012).

### IV. DISCUSSION

The Board first claims that Benuzzi did not file her opposition properly and thus argues that its motion for summary judgment should be granted because it is unopposed. (Def.'s Reply, Dkt. 225, at 2.) This argument is based on the fact that the Benuzzi's agreed motion for leave to file her opposition instanter included the opposition as an attachment. However, after the court granted this motion, Benuzzi did not refile her opposition so it appeared as a separate entry on the docket. The better practice is to file documents so they appear as separate entries on the docket. However, the court did not direct Benuzzi to do so and her opposition and the accompanying exhibits all appear on the docket. (Dkt. 242.) The Board's contention that its motion is unopposed is, therefore, frivolous and wastes space in the Board's oversize twenty-four page reply memorandum.

The court also notes that the Board's oversize reply itself violates the local rules, as it does not contain a table of contents or a table of authorities. *See* Loc. R. 7.1 ("Briefs that exceed the 15 page limit must have a table of contents with the pages noted and a table of cases. Any brief or objection that does not comply with this rule shall be filed subject to being stricken by the court."). Unlike Benuzzi's purported filing error, the court could strike Board's reply based

on this misstep. In an exercise of its discretion, it will not do so. However, the Board is cautioned that it must abandon its scorched earth litigation strategy and follow all applicable rules moving forward.

Turning to Benuzzi's claims, the court previously ordered her to list the adverse actions which form the gravamen of her retaliation claim in her third amended complaint. As explained in the order dismissing Benuzzi's second amended complaint as prolix and improper, the third amended complaint was Benuzzi's final chance to identify the basis for her retaliation claim. Accordingly, the court will proceed based on the acts of alleged retaliation in the third amended complaint. To the extent that Benuzzi's summary judgment filings can be read to allege other claims of retaliation or discrimination, the court will not consider them.

### A. Alleged Retaliation Considered by the Seventh Circuit

Benuzzi asserts six groups of allegedly retaliatory acts that occurred before Judge Conlon granted the Board's first motion for summary judgment, five of which she presented to Judge Conlon and the Seventh Circuit:

| *Benuzzi's Claim* | *Complaint* | *7th Circuit* |
|---|---|---|
| On March 21, 2007, Watkins falsely accused Benuzzi of using "verbally abusive language to or in front of students" and Benuzzi was suspended for fifteen days. | Compl. ¶ 13(a). | *Benuzzi*, 647 F.3d at 659-60 (March 2007 allegation that Benuzzi used "verbally abusive language") |
| On May 7, 2007, Watkins "brought false and contrived disciplinary charges" against Benuzzi based on Benuzzi's failure to respond to an email, causing Benuzzi to be suspended from September 10, 2007, to September 28, 2007, without pay. | *Id*. at ¶ 13(b) | *Id*. at 660 (email incident) |
| In November 2007, Benuzzi was not allowed to interview for an open position because of alleged interpersonal issues with Watkins, even though she was the most qualified person who wanted to bid for the position. | *Id*. at ¶ 13(c) | n/a |

| | | |
|---|---|---|
| In June 2009, Watkins refused to give Benuzzi an evaluation for the 2008-2009 school year, "unlike other similarly-situated employees." | *Id*. at ¶ 16 | *Id*. at 660-61 (refusal to give Benuzzi an evaluation for the 2008-2009 school year) |
| In June 2009, Watkins accused Benuzzi of "snatching" a pen from her and asked that Benuzzi be removed from Pershing West "as a precaution for [Watkins'] safety and the safety of [Benuzzi's] immediate staff." | *Id*. at ¶ 17 | *Id*. at 661 (pen snatching incident and request to remove Benuzzi from Pershing West as a safety precaution) |
| On February 26, 2010, the day after Benuzzi's deposition, Watkins (a) limited Benuzzi's building access to fifteen minutes before and after Benuzzi's shift, even in cases of emergency, despite the fact that Benuzzi was the Chief Building Engineer and (b) gave Benuzzi a Notice of Pre-Discipline Hearing based on eight alleged incidences of misconduct occurring between February 2009 and February 2010. (*Id*. ¶ 19.) The eight alleged incidences of misconduct included Benuzzi's purported assault of custodian Charles Armour. | *Id*. at ¶¶ 21-22. | *Id*. at 661 (limiting Benuzzi's building access starting on the day after her deposition and the issuance of a Notice of Pre-Discipline Hearing) |

In its current motion for summary judgment, the Board contends that the post-remand record is more extensive and now "contains ample evidence to explain" why certain actions considered by the Seventh Circuit were not adverse and others did not rise to the level of actionable retaliation. (Def.'s Memo., Dkt. 226, at 1.) It is impossible to ascertain the precise nature of the alleged changes in the summary judgment record before Judge Conlon and the Seventh Circuit versus the summary judgment record before this court. But this is of no moment.

"[T]he most elementary application of [the law of the case] doctrine is that when a court of appeals has reversed a final judgment and remanded the case, the district court is required to comply with the express or implied rulings of the appellate court." *United States v. Chaidez*, No. 03 CR 636-6, 2013 WL 3819658, at *3 (N.D. Ill. July 22, 2013) (quoting *Moore v.*

*Anderson*, 222 F.3d 280, 283 (7th Cir. 2000)). Here, the Seventh Circuit did not remand the case with directions for this court to reopen discovery regarding issues that were raised on appeal and then consider a new motion for summary judgment. Instead, it remanded Benuzzi's retaliation claim so the court could conduct a trial. *Benuzzi*, 647 F.3d at 666 ("We therefore vacate the district court's grant of summary judgment on Benuzzi's retaliation claim and remand for trial."); *cf*. *Strasters v. Weinstein & Riley PS*, 500 F. App'x 682, 683 (9th Cir. 2012) (vacating the judgment and remanding "to the district court, which may reopen discovery and reconsider whether the defendant is a "debt collector" on summary judgment or, if necessary, proceed to resolve the issue at trial").

The Board is not entitled to take a second bite at the apple by beginning the summary judgment process anew based on claims of retaliation that the Seventh Circuit has found are ripe for trial. In any event, even if the Board could add additional evidence that purportedly supports its position, the result would be the same. The Seventh Circuit concluded that material questions of disputed fact meant that Benuzzi was entitled to a trial. The new evidence submitted by the Board, even if accepted (an issue which cannot be determined at the summary judgment stage) does not cancel out Benuzzi's competing evidence. The Board tacitly concedes as much by arguing that its new evidence "substantially undermines [Benuzzi's] retaliation claim." (Def.'s Reply, Dkt. 255, at 5.) The Board's motion for summary judgment as to all of the alleged incidences of retaliation that were presented to Judge Conlon and the Seventh Circuit is denied.

**B.    Alleged Retaliation Not Considered by the Seventh Circuit**

The Seventh Circuit's opinion does not mention Benuzzi's claim that in November 2007, Watkins prevented her from interviewing for an unspecified open position even though she was

the most qualified person who wanted to bid for that position. (Compl. ¶ 13(c).) The court has reviewed the record before Judge Conlon; Benuzzi does not appear to have included this alleged act of retaliation in her original summary judgment filings.

Benuzzi also asserts two additional instances of alleged retaliation that occurred after Judge Conlon granted the Board's first motion for summary judgment. These instances, as described by Benuzzi, are as follows:

1. After a disagreement with Arts Administrator Dorethea Roque about Benuzzi's refusal to violate CPS rules by building Roque an office in a space used for storage, Roque "threatened [Benuzzi], stating, "I'm gonna get that large storage room. You just watch and see." Benuzzi reported Roque's improper request for work and her threat to Watkins, causing Roque to "charge[]" into Benuzzi's office while pointing a pencil in the presence of Benuzzi's assistant, William Smith. Benuzzi asked Roque to leave and Roque then deliberately stepped into the path of a door that closed slowly due to its pneumatic mechanism. Roque called the police and accused Benuzzi.of hitting her with the door. Watkins "authorized and caused" Benuzzi's arrest, even though Smith told Watkins that Benuzzi had not hit Roque with the door and Watkins should have known that Roque's assertions were false due to the pneumatic door-closing mechanism. On August 26, 2010, Benuzzi received a Notice of Pre-Suspension Hearing based on her alleged use of a door to assault Roque. The Board suspended Benuzzi without pay from September 29, 2010 through November 12, 2010. The prosecutor dropped the battery charge and Benuzzi later received backpay for the time she was suspended. (*Id*. ¶¶ 25-37.)

2. "As a result of [Benuzzi's] protected activity, [the Board] continued to harass and retaliate against [Benuzzi], blocking transfers and promotions, and forcing her into retirement." (*Id*. ¶ 38.)

The court considers these three instances of alleged retaliation in turn.

**1. Benuzzi's Claim that Watkins Thwarted Her From Receiving a Promotion in November 2007**

In her third amended complaint, Benuzzi alleges that in November 2007, Watkins prevented her from interviewing for an unspecified open position even though she was the most qualified person who wanted to bid for the position. (Compl. ¶ 13(c).) This allegation appears

to match up to the undisputed fact that in November 2007, Anthony Batastini (a chief engineer at Chicago Public Schools who apparently was the decision-maker) did not select her for a higher-ranking, higher-paying position leading a "roving crew" that performed emergency repairs at various schools because he believed that she could not work with school principals.[1] (Def. Statement of Fact, Dkt. 221, at ¶ 36.)

At his deposition, Batastini was asked if his "primary factor in deciding" not to select Benuzzi was "communications that [he] was hearing from [] Watkins." (Batastini Dep., Def. Ex. HH, at 88:9-12.) He responded that this was not his primary reason but it was approximately half of the reason, along with his assessment of Benuzzi's mechanical abilities, leadership skills, and ability to work with people. (*Id*. at 88:15-23.) The parties do not dispute that the "roving crew" position was a promotion that would have resulted in an increase in pay.

In the absence of any clarification from the parties – or indeed, any discussion at all about this issue – the court will assume that Benuzzi wishes to use the direct method of proof. As noted above, this requires Benuzzi to point to evidence showing that she engaged in statutorily protected expression that caused her to suffer an adverse action. *Benuzzi*, 647 F.3d at 664. The Seventh Circuit has held that Benuzzi engaged in protected activity during what it characterized as the "eventful" 2006-2007 school year. *Benuzzi*, 647 F.3d at 661, 664. A failure to promote that would result in a significant change in benefits is an adverse employment action. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). With respect to the causal

---

[1] Although the Board included facts about the "roving crew" retaliation claim in its statement of facts and Benuzzi largely does not dispute those facts, the parties do not discuss this alleged instance of retaliation in their summary judgment briefs (the Board's motion and reply and Benuzzi's response). This presentation leaves much to be desired.

connection element, given Batastini's testimony that information flowing from Watkins was half of the reason that he did not select Benuzzi, the Board is not entitled to summary judgment based on this alleged instance of retaliation. This conclusion is further buttressed by the Seventh Circuit's finding that other alleged instances of retaliation in this time period warrant a trial.

### 2. The Roque Incident and Benuzzi's Subsequent Suspension Without Pay

Benuzzi and Arts Administrator Dorethea Roque had a disagreement about construction that Roque wanted Benuzzi to perform. According to Benuzzi, Roque threatened her so she reported the construction request and Roque's threat to Watkins. After Roque stepped into the path of a door closing slowly due to a pneumatic mechanism, Roque called the police and accused Benuzzi of hitting her with the door.

The Board contends that no admissible evidence shows that Watkins was behind Roque's decision to call the police or the decision to arrest Benuzzi for battery. Thus, it concludes that the Roque incident is not actionable retaliation that can be attributed to Watkins. The problem with this argument is that a police officer spoke with Watkins about the incident when he arrived at the school, before the police decided to arrest Benuzzi.

In addition, the Board suspended Benuzzi for more than two months while it investigated the incident, even though Benuzzi contends that Watkins spoke to a eyewitness who supported Benuzzi's version of events. Benuzzi also contends that Watkins inspected the door and thus knew that it could not close in the way that Roque described. Next, Benuzzi asserts that on October 10, 2010, more than a month before the suspension was lifted, the Chicago Public School inspector responsible for investigating the incident submitted a report stating that the decision to arrest Benuzzi was based on, among other things, pressure from Watkins.

The court need not delve into the parties' disagreement about whether Benuzzi's arrest is attributable to Watkins as it is undisputed that the arrest caused Benuzzi to be suspended without pay. Even though Benuzzi later received an award of backpay, "a suspension that ends in reinstatement and reimbursement can constitute an adverse employment action." *Ismail v. Donahoe*, No. 11 C 8812, 2015 WL 4247029, at *4 (N.D. Ill. July 14, 2015) (quoting *Phelan v. Cook Cnty.*, 463 F.3d 773, 781 (7th Cir. 2006)). The continued suspension in the face of some evidence exonerating Benuzzi is sufficient to survive summary judgment.[2] Thus, the Board is not entitled to summary judgment based on the Roque door battery incident and its aftermath.

### 3. Constructive Discharge/Forced Retirement Due to Alleged Retaliation

"A constructive discharge 'address[es] situations in which employers coerce[ ] employees to resign, often by creating intolerable working conditions, in retaliation for employees' engagement in protected activities." *Arce v. Chicago Transit Auth.*, No. 14 C 102, 2015 WL 3504860, at *6 (N.D. Ill. June 2, 2015) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)). Benuzzi announced her decision to retire in March 2012. The most recent prior alleged instance of retaliation was the Roque arrest/suspension incident, which was ultimately resolved in Benuzzi's favor in late 2010.

Benuzzi contends that she decided to retire because the years of interacting with Watkins and Watkins' continued efforts to get rid of her became unbearable and thus created an intolerable work environment. The Board contends that it is entitled to summary judgment

---

[2] This is so despite the Board's argument that the October 10, 2010 report that supports Benuzzi's claim contains inadmissible hearsay. The report is admissible, at the least, to show the impact that it had on the Board (as opposed to being admissible for the truth of the statements made by the officers that are memorialized in the report). *See Nettles-Bey v. Burke*, No. 11 C 8022, 2015 WL 4638068, at *7 (N.D. Ill. Aug. 4, 2015).

because financial reasons caused Benuzzi to decide to retire. According to the Board, to the extent that Watkins' actions played any role in Benuzzi's decision, Watkins acted due to personal animosity, not because Benuzzi engaged in protected activity.

The parties' differing positions present clear questions of material disputed fact that cannot be resolved at the summary judgment stage. Benuzzi has alleged multiple instances of alleged retaliation, including an incident that led to a criminal proceeding against her which was ultimately resolved in her favor. The Board's contention that "nothing indicates [that Benuzzi's] working conditions were so objectively unreasonable that she had to retire" is flatly contradicted by the record. (Def.'s Memo., Dkt. 226, at 15.)

The court also rejects the Board's argument that Benuzzi's constructive discharge claim fails due to the timing of Benuzzi's retirement. The Board stresses that the gap between the last alleged act of retaliation and Benuzzi's retirement announcement is so long that her working conditions could not have been intolerable. Relatedly, it asserts that if those conditions were intolerable, Benuzzi would not have given three months notice prior to her retirement.

In some instances, opting for retirement can be "the opposite of what a person seeking to cure an intolerable work environment would have done." *Brown v. Ameritech Corp.*, 128 F.3d 605, 608 (7th Cir. 1997) (affirming summary judgment against employee who claimed he retired because he was constructively discharge after he complained about a work assignment and his supervisor told him, "You can take it [early retirement] and you are out of here."). However, retirement can equate to constructive discharge when an employee is faced with a "Hobson's choice in which the employee must resign or suffer severe consequences, such as facing criminal charges." *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010).

Here, even setting aside all of the other instances of alleged retaliation, Watkins accused Benuzzi of theft during their first conversation and Benuzzi was arrested following the Roque door battery incident. A reasonable jury could find that the timing of Benuzzi's retirement was consistent with her professed fear that if she continued to work long-term, Watkins would find additional ammunition that would culminate in further criminal charges and further retaliation based on prior protected conduct. *See id*. A reasonable jury could also find that the breadth and nature of the alleged retaliation in this case rose to the level of constructive discharge despite the timing of Benuzzi's retirement. *See Cook v. Illinois Dep't of Corr.*, 736 F. Supp. 2d 1190, 1200-01 (S.D. Ill. 2010) (denying employer's motion for summary judgment on employee's constructive discharge claim when employee alleged a pattern of retaliation and a fear of future retaliation, even though the past retaliation stopped six months before the employee retired).

The gaps between the Roque arrest/suspension incident, Benuzzi's retirement announcement, and her actual retirement might undercut this theory. But on this record, this is a question for a jury that cannot be resolved as a matter of law. The Board's motion for summary judgment on Benuzzi's constructive discharge retaliation claim is denied.

## V. CONCLUSION

For the reasons set forth above, the Board's second motion for summary judgment [220] is denied. A status hearing is set for September 16, 2015 at 9:30 a.m. The parties should be

prepared to set firm trial and related dates.


Date: August 12, 2015                                  /s/
                                            Joan B. Gottschall
                                            United States District Judge